Per Curiam.

In its petition, lessor alleges that it had duly performed all the obligations and conditions imposed upon it by the lease and supplement to the lease. Lessee’s answer admits that the lease and supplement to lease were executed, that he occupied the storeroom as a lessee for 17 months, and that he subsequently repudiated the lease and vacated the premises.
Lessee contends that his opening statement and answer set forth a defense because they disclose that lessor did not fulfill the conditions of the supplement to lease in that lessor failed to lease the other three storerooms “planned for occupancy” by July 1, 1956, and did not even do so before lessee vacated the premises. Lessee contends that this released him from any obligations under the lease and supplement thereto.
Admittedly, the supplement to lease as originally drawn read:
“It is understood that construction of this unit will not be started unless there are at least four (4) leases signed and planned for occupancy prior to July 1, 1956.” (Emphasis added.) The words “signed and” were crossed out and initialed by both parties prior to the signing of the supplement to lease so that the sentence read, “four (4) leases planned.”
Thus, both parties understood that there was to be no agreement by the lessor that four signed leases should be in existence by July 1, 1956, but only an understanding that four leases would be planned as they were on that date.
Lessee contends also that the trial court erred in not considering the allegations in his answer that lessor fraudulently induced lessee to remain in possession as a tenant by falsely claiming at various times that it had other tenants about ready to move into the three vacant storerooms. The trial court did consider the lessee’s answer together with his opening state *40 ment and properly held that any sneh representations conld not vary or contradict the terms of the written lease and supplement thereto. As was pointed out before, there was no agreement that there would be four tenants actually in the shopping center by July 1, 1956, but only an agreement that such occupancy would be “planned” by that date.
Lessee specifies as error the action of the trial court in determining damages without the taking of further testimony. However, the record clearly shows that lessee specifically agreed to allow the court to proceed with the assessment of damages without the aid of a jury. Lessee cannot now assert that the trial court erred in making such determination.
Lessee further attacks the amount of damages assessed. However, the amount of rent due under the lease is a matter of simple mathematics, i. e., minimum rental from May 1, 1958 (when the other three storerooms were occupied), to April 1, 1960 (when this storeroom was re-rented), at $500 per month for 23 months or a total of $11,500.
Regarding the damages allowed for the fixtures, the amount lessee maintained he could show was offered to lessor for the fixtures ($1,500) was deducted from the $5,000 amount lessor claimed as damages for such fixtures.
Lessee contends that allowing the lessor $500 per month rental and also the cost of fixtures to be furnished by the lessor gave the lessor double damages.
The clause in the supplement to lease dealing with the purchase of fixtures by the lessor was clearly designed to give added inducement to the lessee to enter into the lease agreement. Upon its face, the clause is one-sided, the benefits flowing only to the lessee. The fixtures represented an out-of-pocket expense to the lessor which it was willing to sustain only if lessee would enter into and remain in possession of the storeroom and conduct his business therein.
The lessor probably anticipated receiving back the $5,000 spent for fixtures either through the minimum rental payments or through the receipt of a percentage of sales over a certain amount specified as additional rental in the lease. Certainly, lessor did not bargain for a breach of the lessee’s undertakings when it advanced the $5,000 for fixtures.
*41 If the lessor had agreed that the $5,000 expenditure would be amortized, in part from each minimum payment of rent, then lessee’s complaint about double damages might be valid. But see 5 Williston on Contracts (Rev. Ed., 1937), Section 1363A. This would be because the total figure of minimum rent paid would be the same at the termination of the lease, regardless of who paid it, the original lessee or a new lessee. However, the lessor did not so agree. Furthermore, the minimum rental payments of $500 a month were not all that the lessor originally bargained for under the lease.
If the lessor anticipated receiving back the $5,000 through the receipt of the additional rental (from a percentage of sales), then it was prevented from receiving it by the lessee’s repudiation of the lease. The subsequent new lease agreement negotiated by lessor had no clause in it providing for additional rental payments based on a percentage of sales. In other words, lessor would only have had a chance to receive back its $5,000 expenditure from the additional rental payments if lessee was the tenant of the storeroom, since lessee was the only tenant who could use the special fixtures and with whom there was an agreement for payment of additional rental.
Since there are two reasonable methods lessor could have had in mind as to how it would receive back this out-of-pocket expense, would it be reasonable to adopt the one advantageous to the lessee who breached the lease and caused the loss to arise?

Judgment affirmed.

Taet, C. J., Zimmerman, O’Neill, Gbieeith, Hebbebt and Gibson, JJ., concur.
Matthias, J., not participating.